**UNITED STATES of America,**
**Plaintiff–Appellee**

v.

**Arthur Wayne BALDWIN,**
**Defendant–Appellant.**

**No. 79–5128.**

United States Court of Appeals,
Sixth Circuit.

Sept. 30, 1980.

Kemper B. Durand, Bruce Kramer, Memphis, Tenn., for defendant–appellant.

W. J. Michael Cody, U. S. Atty., W. Hickman Ewing, Jr., Asst. U. S. Atty., Memphis, Tenn., for plaintiff–appellee.

Before KENNEDY and MARTIN, Circuit Judges and PECK, Senior Circuit Judge.

ORDER

The decision in this case is reported at 621 F.2d 251 (6th Cir. 1980). A motion to reconsider the case has been filed along with a request that the active judges of the circuit be polled to consider rehearing the case en banc. Rule 35, Federal Rules of Appellate Procedure. A majority of the circuit having considered and voted against en banc and the panel having reviewed the motion to reconsider, it is hereby ordered that both motions be denied.

NATHANIEL R. JONES, Circuit Judge, dissenting, in which KEITH, Circuit Judge, joins.

A majority of this court has denied plaintiff's petition to rehear this case *en banc.* Because I believe the panel's decision is contrary to the requirements of the Fourth Amendment, I dissent from the denial of the petition.

I. INTRODUCTION

The government secreted a police officer in the *legitimate* employ of the appellant Baldwin. This policeman, while employed in the home of appellant, proceeded to secure from the residence several samples of cocaine without Baldwin's knowledge or consent.

The central issue is whether the government is required to secure a search warrant in order to place an undercover agent as an employee, in a private home, for a period of several months. The panel upholds the district court's ruling that the seizure of these samples was constitutional because the agent was "lawfully" present and the evidence seized was in "plain view." By implication the panel further holds that the discovery and seizure of the evidence was inadvertent. I believe that the panel's decision errs in its application of the "plain view" doctrine and in its holding that Baldwin consented to the presence of the undercover agent in his home. As a result, the panel's decision expands the circumstances in which a search warrant is not required. Such an expansion collides with the Fourth Amendment's guarantee to citizens of security "in their persons, houses, papers and effects, *against* unreasonable searches and seizures" and its protection "of the sanctity of man's home and the privacies of life." *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886).

It was the clear design and attempt of the government to conduct surveillance on Baldwin's activities and to seize evidence within his home. There is no evidence in the record that Baldwin waived his rights to the security of his home. In short, the panel's reasoning is unpersuasive, because the initial entry by the undercover agent into Baldwin's home was unconstitutional. Consequently, the subsequent search and seizure within his home cannot be justified by the "plain view" doctrine. *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

II. WARRANT REQUIREMENT

The general rule is that a police officer must obtain a search warrant before searching a home and seizing evidence. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Gouled v. United*

*States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed.2d 647 (1921). A warrant is unnecessary only rarely when the government can show exigent circumstances of constitutional magnitude. *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). The government, in my view, has not shown an exigent circumstance that would eliminate the need for a search warrant. The Supreme Court said almost 60 years ago:

> [W]hether entrance to the home or office . . . be obtained by a representative . . . of the government . . . by stealth . . . or in the guise of a business call, and whether the owner be present or not when he enters, any search and seizure subsequently and secretly made in his absence falls within the scope of the prohibition of the *Fourth Amendment.*

*Gouled v. United States,* 255 U.S. 298, 306, 41 S.Ct. 261, 264, 65 L.Ed. 647 (1921) (emphasis added). *Gouled* continues to stand as good law. In approving the use of informants to report conversations in which they participated, the court cites *Gouled* as an example of impermissible guileful activity. *Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966). Similarly the court in approving the seizure of drugs involved in a drug transaction expressly distinguishes *Gouled.* *Lewis v. United States,* 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). The court said in *Lewis* :

> But when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant. Of course, this does not mean that, *whenever entry is obtained by invitation and the locus is characterized as a place of business, an agent is authorized to conduct a general search* for incriminating materials; a citation to the

*Gouled* case, *supra,* is sufficient to dispose of that contention.

*Id.* at 211, 87 S.Ct. at 427 (emphasis added). In *Lewis* agents did not search the home and only introduced as evidence the specific drugs purchased in the transaction at the defendant's home. Baldwin did not invite anyone in for illegal trade or business.

In sum, the Supreme Court has held that agents may not secretly invade the home of a private citizen without a warrant. Since there clearly was such an invasion in this case, the evidence was illegally seized.

### III. ENTRY BY RUSE

The Supreme Court has held that, in order to effectuate a purchase of illegal substances, agents may gain entry by a ruse. *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). The panel extends this rule to the entry of a police officer for a *legitimate* purpose (in this case employment as a handyman and chauffeur). Under the rule proposed by the panel, the Memphis police officer could pose as a plumber, electrician, or phone company representative and, having *lawfully* secured entry seize evidence which was in "plain view." Unless Fourth Amendment protections are applied, the police could target specific individuals for *any* reason and secure entry in the hope of finding incriminating evidence, e. g., it is not impossible to think of law enforcement officials targeting "unpopular" judges, politicians or private individuals. I do not believe the Fourth Amendment would permit a policeman to gain such employment and in the course of that employment conduct a search and seize evidence in "plain view."

The Supreme Court has held that OSHA agents may not make safety checks of non-public parts of a business without securing a search warrant. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). I do not believe that we could permit these OSHA agents to gain entry by securing employment through a ruse and thereby find OSHA violations in "plain view," without such an intrusion violating

the Fourth Amendment. Similarly, the Internal Revenue Service cannot hire its agents out as income tax consultants and seize evidence in plaintiff's records as being in "plain view." Yet that is where we are led by the panel's opinion in this case.

Two lines of precedent may seem to support the panel's opinion, but upon close examination it is clear they do not. First are the cases in which the government has secreted agents into the homes of defendants in order to record their conversations or to have the informant repeat them. *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). These cases mark a narrow exception to the general rule that without a warrant the government may not intrude anywhere that a citizen has an expectation of privacy. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).[1] These cases should be interpreted as making a participant in a conversation free to record or repeat it without having first to secure a warrant. The rationale for this approach is, I believe, a function of the nature of conversations. A conversation belongs equally to all participants. Thus, no one can have an expectation of privacy about the use of a conversation by a participant.

Nothing in *White* or *Hoffa* supports an extension beyond conversations to other kinds of seizures of evidence. First, as noted before, *Hoffa* explicitly reaffirms the soundness of *Gouled*. Second, after *Katz*, *Hoffa* must be read in its narrowest terms. Though *Katz* did not overrule *Hoffa*, *Katz* sets forth a heightened concern about privacy interests protected by the Fourth Amendment. *Hoffa* merely permits the use of informants in carefully defined circumstances.

Second, we must distinguish the situation in which a defendant invites an undercover agent into his home for an illegitimate activity. In this situation, the government agents have probable cause to believe that a crime is about to be committed. It is impossible for them to refuse admittance and to seek a search warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The seizure of evidence takes place shortly after the illegal transaction occurred, and the agent or police officer involved is present. *Cf. Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966) (purchase of drugs by an agent); *United States v. Glassel*, 488 F.2d 143 (9th Cir. 1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974) (agent went into home to purchase drugs). None of these circumstances is present here. A person who employs someone for a legitimate purpose does not give the undercover police officer or agent probable cause to believe that a crime is in progress. There is no reason for permitting the government to intrude into the privacy of an individual's home without that probable cause. If there are other circumstances which would constitute probable cause and necessitate intrusion into a defendant's home, police officers can secure a search warrant.

The panel does cite one case, *United States v. Raines*, 536 F.2d 796 (8th Cir. 1976), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976), which states in *dicta* a rule inconsistent with this approach. In *Raines*, a federal agent posing as a friend of defendant's associate who was jailed gained entry to the defendant's apartment. However, even in this case the agents did not secure any evidence which was supposedly in "plain view." The defendant turned over to the agents the evidence with apparent consent. Thus, the panel's view of the scope of the Fourth Amendment approves a new and more dangerous government intrusion into the privacy granted individuals by the Constitution.

## IV. "PLAIN VIEW"

The panel, in my opinion, also errs in its application of the "plain view" doctrine. The "plain view" doctrine requires, first, that the initiation of the search be justified.

1. For a thorough discussion of the expectation of privacy issue see *United States v. Bailey*, 628

F.2d 938 (6th Cir., 1980) (Judges Celebrezze, Keith and Phillips).

As discussed above, I would hold that the undercover agent's entry and continued presence in Baldwin's home was unlawful. Second, under the "plain view" doctrine, the discovery of the evidence must be inadvertent. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The courts have consistently held that police and government agents cannot circumvent this rule by maneuvering evidence into "plain view." *United States v. Hare*, 589 F.2d 1291 (6th Cir. 1979); *Fankboner v. Robinson*, 391 F.Supp. 542 (W.D.Va.1975), *rev'd on other grounds without opinion sub nom., Fankboner v. Paderick*, 538 F.2d 324 (4th Cir. 1976). In *Hare* a panel of this Circuit interpreted inadvertent action as unintentional action. In my view when the undercover police officer secreted himself in the employ of a private citizen to gain entry into his home, the undercover police officer was intentionally maneuvering the evidence into "plain view." It also appears that the police officers could have secured a search warrant, but did not, in violation of the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It is inconceivable that the "plain view" principle, which is premised on the presence of exigent circumstances, could justify the seizure of evidence by an undercover agent who had been living in Baldwin's home for several months. This unlimited and unchecked invasion of Baldwin's privacy makes compelling the need for judicial supervision by means of a search warrant. This term the Supreme Court said "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not *reasonably* be crossed without a *warrant*." *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (emphasis added). If we apply that general principle to this case, I do not believe the panel's view of this intrusion on Baldwin's rights can withstand scrutiny.

## V.

I fear that the panel's holding deprives persons of their constitutional rights once the government places the label of "suspect" upon them. In order to meet the Fourth Amendment's requirement of reasonableness, I am convinced that police must obtain a search warrant in order to plant an agent as a household employee or in other *legitimate* activities in order to seize evidence in anyone's home. In addition, the agents may have to secure search warrants in order to seize any piece of evidence. Such a rule would be consistent with the cases which permit police officers to seize evidence in "plain view" without adopting a rule which severely limits the scope of the Fourth Amendment. This proposed rule would not inhibit the legitimate undercover activities of the police.

Chief Judge Edwards has authorized me to say that in view of the importance and difficulty of the issues in this appeal, he joins in dissent from denial of an en banc hearing.

Accordingly, I respectfully dissent.